UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NARCISA ANDUNDIA-CARILLO,<br><br>Petitioner,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Respondents. | Case No. 3:25-cv-10380<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 4 |

Before the Court is Petitioner's *Ex Parte* Motion for Temporary Restraining Order. TRO Mot., ECF No. 4. On December 3, 2025, Petitioner filed a Petition for Writ of Habeas Corpus, and an *Ex Parte* Motion for Temporary Restraining Order, against Field Office Director of the San Francisco Immigration and Customs Enforcement Office Sergio Albarran, Acting Director of United States Immigration and Customs Enforcement Todd Lyons, Secretary of the United States Department of Homeland Security Kristi Noem, and Attorney General of the United States Pamela Bondi. ECF Nos. 1, 4. Petitioner asks this Court to (1) immediately release her from Respondents' custody and enjoin Respondents from re-detaining her absent further order of this Court; (2) in the alternative, immediately releases her from Respondents' custody and enjoin Respondents from re-detaining her unless they demonstrate at a pre-deprivation bond hearing, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community such that her physical custody is required; and (3) prohibit the government from transferring her out of this District and/or removing her from the country until these habeas proceedings have concluded. ECF No. 4. For the following reasons, the TRO is **GRANTED** as modified below.

**I.      BACKGROUND**

According to the record before the Court, Petitioner is an asylum seeker who fled to the

United States from Ecuador in 2022, fleeing extortion, death threats, and sexual violence. ECF No. 1 ¶¶ 5, 60, 61. When Petitioner arrived in the United States, "[s]he was apprehended by immigration officials at the border and was released after nearly two months in ICE detention." *Id.* ¶ 60. "Respondents determined she posed little if any flight risk or danger to the community and released her into the community." *Id.* "Petitioner has no criminal record, and there is no basis to believe that she poses any public-safety risk." *Id.* at 54. "She has appeared repeatedly at her immigration hearings." *Id.*

Petitioner "has filed a timely asylum claim and was scheduled to have a merits hearing in the San Francisco Immigration Court on January 8, 2026." *Id.* at 3. "Throughout Petitioner's asylum case, she has been on the non-detained docket, that is, she has been allowed to be free while pursuing her immigration case." *Id.* at 7.

On December 3, 2025, Petitioner attended an Immigrations and Customs Enforcement ("ICE") check-in at 630 Sansome Street in San Francisco. *Id.* at 10. Petitioner "showed the ICE officers her chat log with dozens of messages and proof of all her check-ins, demonstrating that she was fully cooperating and responsive within the online ICE check-in process." *Id.* Despite this, "ICE agents alleged that Petitioner missed an ICE self report check-in on July 23, 2025, even though there was no appointment visible on Petitioner's application for that date," and detained her. *Id.* "ICE officers did not allow Petitioner's attorney to speak with Petitioner after she was detained" and presented no evidence "to document the grounds for detention." *Id.* at 11–12. "She is presently in civil immigration detention at 630 Sansome Street in San Francisco." *Id.* at 21.

On December 3, 2025, the Petition was filed. The same day, Petitioner's counsel provided notice of the Petition and a forthcoming motion for a TRO to the U.S. Attorney's Office. ECF No. 4-2, Decl. of Ghassan Shamieh ¶ 19. Petitioner's counsel did not receive a substantive response. *Id.* ¶ 6. Counsel for Petitioner also emailed a copy of the filed Petition and a copy of the Memorandum of Points and Authorities to Respondents' counsel shortly before filing it. ECF 4 at 2. In the motion, Petitioner contends that her arrest and detention violate the Due Process Clause of the Fifth Amendment, both substantively (because Respondents allegedly have no valid interest in detaining her) and procedurally (because she was not provided with a pre-detention bond

hearing).

## II.    LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

## III.   DISCUSSION

Petitioner has demonstrated a likelihood of success on the merits of her claim that her ongoing detention violates her procedural due process rights under the Fifth Amendment. Petitioner has a substantial interest in remaining out of custody, and the Due Process Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention. *Pinchi v. Noem*, --- F. Supp. 3d ----, No. 25-cv-05632-PCP, 2025 WL 2084921, at *2-6 (N.D. Cal. July 24, 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319

3

(1976) to similar circumstances); *see also Pablo Sequen v. Kaiser*, --- F. Supp. 3d ----, No. 25-cv-06487-PCP, 2025 WL 2203419, at *2 (N.D. Cal. Aug. 1, 2025) (collecting cases).

        Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that she has "also carried [her] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

        The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and others have concluded under similar circumstances, "the potential harm to [Petitioner] is significant, while the potential harm to the government is minimal." *Pablo Sequen*, 2025 WL 2203419, at *3. At most, the government faces a short delay in detaining Petitioner if it ultimately demonstrates, by clear and convincing evidence, that her detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty

concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

A TRO immediately releasing Petitioner is appropriate to return her to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below. This Order accords with many other recent grants of temporary relief in similar circumstances. *See, e.g.*, *Alva v. Kaiser*, No. 25-cv-06676, 2025 WL 2294917, at *3 (N.D. Cal. Aug. 7, 2025) (granting temporary restraining order); *Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (granting temporary restraining order requiring release of asylum seeker and a pre-detention bond hearing before re-arrest); *Singh*, 2025 WL 1918679, at *10 (granting preliminary injunction); *Doe v. Becerra*, No. 25-cv-647-DJC-DMC, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (granting temporary restraining order); *see also Diaz*, 2025 WL 1676854 (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody five years); *Garcia v. Bondi*, No. 25-cv-5070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025) (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody six years ); *Enamorado v. Kaiser*, No. 25-cv-4072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025).

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . .

hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## IV. ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Motion for Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Respondents are **ORDERED** to immediately release Petitioner from Respondents' custody and **ENJOINED AND RESTRAINED** from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing Petitioner from the United States.[1] This Order shall remain in effect until **December 17, 2025** from date TRO issues.

Respondents are **ORDERED TO SHOW CAUSE** in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, on **December 17, 2025** why a preliminary injunction should not issue. Respondents shall file a response to Petitioner's motion by no later than **December 10, 2025**. Any reply shall be filed by **December 14, 2025**. The assigned Judge may modify this schedule as appropriate.

**IT IS SO ORDERED.**

Dated: December 3, 2025 at 8:25 p.m. PT

Yvonne Gonzalez Rogers
United States District Judge

---

[1] Petitioner also asks the Court to order that she remain within the Northern District of California in order to preserve this Court's jurisdiction, but it is well-established that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).